UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MAURICE MOORE,<br><br>    Plaintiff<br><br>v.<br><br>JAMES SCALLY, et al.,<br><br>    Defendants | Case No.: 2:22-cv-01635-APG-MDC<br><br>**Order Granting Defendants' Motion for Summary Judgment**<br><br>[ECF No. 48] |

Plaintiff Maurice Moore sues various officials with the Nevada Department of Corrections (NDOC) based on events that took place while he was incarcerated at High Desert State Prison (HDSP). Moore asserts a Fourteenth Amendment equal protection claim against defendants Stacy Barrett, Bryant Vaughn, and James Scally based on allegations that these defendants treated Moore less favorably than other protective custody (PC) inmates without a rational basis for doing so. Specifically, he contends that the defendants removed him from the workers' unit and did not allow him to work without explaining why. He also asserts that HDSP officials offered camp privileges to some PC inmates but not to him, again without explanation.

The defendants move for summary judgment, arguing that Moore did not exhaust his administrative remedies because he never pursued grievances related to camp privileges or his job past the informal level. The defendants also contend that Moore's claims fail on the merits because he was ineligible for camp due to his underlying crime, and he was given a job but lost it when he did not show up for work. Scally contends that all he did was deny Moore's grievance related to camp, but he did not have the power to change NDOC's administrative regulations that prohibit inmates with sex offenses from going to a camp or to change Moore's classification, so he cannot be liable. Alternatively, the defendants assert they are entitled to qualified immunity.

Moore responds that the defendants have failed to present evidence in support of their motion to show that he lost the culinary job because he refused to work. According to Moore, if an inmate refuses to work, he is written up, but the defendants have presented no evidence of a write up. He asserts that the decision to remove him from the job was not based on evidence, such as statements from correctional officers assigned to oversee culinary workers or video evidence of whether he showed up for work, and instead appears to be based on a "statement from a random inmate." ECF No. 55 at 4. He contends that when inmates are moved to the worker unit, sometimes their name is mistakenly not added to the roll call list, which gives the incorrect impression that the inmate has not shown up for work when he actually has. Moore asserts that this happened to him, and after he reminded the roll call officer and the case worker, then his name "suddenly appeared on the roll call sheet; after which [he] was allowed entry into the kitchen for work detail." *Id.*

As for the camp placement, Moore argues that the defendants admit they are treating him differently than other inmates because they concede the ARs treat certain convicted felons differently in terms of who can attend camp. He argues that the defendants could have credited him with camp days as they do for other inmates housed with him or could have offered him alternative programming options that could equate to camp credits but they have not done so.

Finally, Moore asserts that his kites and grievances were part of the grievance process, as are his lawsuit and his opposition to the defendants' motion for summary judgment. He also argues that the HDSP grievance process is a scheme to discourage inmates from seeking relief, as grievances are ignored, denied, or rejected as improper grievances.

I grant the defendants' motion for summary judgment because no genuine dispute remains that Moore did not properly exhaust the available administrative remedies.

## I. BACKGROUND

Moore was incarcerated after he was convicted of lewdness with a child under age 16.[1] ECF No. 48-1 at 2-3. In December 2019, Moore was assigned to work in the culinary at HDSP. *Id.* at 4. In late January 2020, he was told he was going to be moved out of the work unit, and he questioned why and whether he would be able to keep his culinary job. ECF No. 20 at 4. The next day, he was removed from his culinary position, and a few days later he was moved from the unit in which he was housed. ECF Nos. 48-1 at 4; 48-3 at 2. According to notes in NDOC's offender information summary (OIS), Moore lost his culinary job because he never reported to work. ECF No. 48-1 at 4. The OIS notes state that Moore "claims he tried to go to work" but he did not try to speak with his caseworker, submit a kite, or speak to a correctional officer. *Id.* According to the OIS notes, another inmate reported that Moore "went to work for one night and said it was not for him." *Id.*

In August 2022, Moore filed an informal grievance about being removed from his job and from the workers unit "for no reason and without any writeups."[2] ECF No. 20 at 10. In that grievance, Moore stated that he "grieved the illegal move but [he] never received a response." *Id.* Other than this statement in this grievance, there is no evidence Moore had previously filed a grievance about his job. There is no evidence that he appealed to a higher level after receiving no response to this or any other grievance related to his job.

---

[1] Although the nature of an inmate's conviction is often irrelevant to his claims about conditions of confinement, I mention it here because Moore's conviction relates to the reason advanced for denying his request to attend camp.

[2] There is no grievance number on this document nor any indication that it was received by someone at NDOC. Nor is it listed in NDOC's grievance history for Moore. *See* ECF No. 48-6. However, I must view the evidence in the light most favorable to Moore, so I accept at this stage that he filed this grievance with NDOC.

The same month, Moore also requested Vaughn permit him to go to a camp if he was eligible. ECF No. 20 at 9. Vaughn responded that Moore was "not eligible." *Id.* Moore filed a grievance about not being allowed to go to a camp, stating that HDSP "cannot discriminate against certain PC inmates due to the nature of their conviction, while at the same time allow other PC inmates camp privileges due to the nature of their conviction." ECF No. 20 at 13 (simplified). Scally denied this grievance at the informal level in part because Moore wrote more than one line of text per line on the grievance form and wrote in the margins in violation of Administrative Regulation (AR) 740.04. ECF Nos. 48-5 at 2; 48-6 at 4. Scally advised Moore to correct the deficiencies and resubmit the grievance. ECF Nos. 48-5 at 2; 48-6 at 4. Moore resubmitted the grievance. ECF Nos. 48-5 at 10-12; 48-6 at 5. Scally again denied the informal grievance for the same reasons, as well as because Moore did not attach required documents. ECF No. 48-6 at 5. Moore did not thereafter resubmit the grievance at the informal level, nor did he appeal to a higher level.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies prior to filing a lawsuit is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). That means the inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). The inmate thus must comply "with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Consequently, the defendants bear the burden of proving the inmate failed to exhaust an available administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). If the defendants do so, then the burden shifts to the inmate to show "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191

1  (9th Cir. 2015) (quotation omitted).  The defendants bear the "ultimate burden" of proving a
2  failure to exhaust. *Id.*
3      NDOC's grievance process is governed by AR 740. ECF No. 48-7.  That process has
4  three levels through which the inmate must proceed in order to exhaust: an informal grievance,
5  first level, and second level. *Id.* at 10-15.  Under AR 740.03(8), if NDOC's response to a
6  grievance is overdue, the "inmate may proceed to the next grievance level." *Id.* at 6.
7      Even viewing the evidence in the light most favorable to Moore, no genuine dispute
8  remains that he did not properly exhaust his administrative remedies.  Moore never proceeded
9  past the informal grievance level on any grievance related to his job or placement at a camp.
10 Although Moore argues the grievance procedure was unavailable to him, he presents no evidence
11 from which a reasonable jury could find in his favor.  His informal grievance related to camp
12 was rejected for writing more than one line of text per line of the grievance form and for writing
13 in the margins. AR 740.04 outlines reasons why grievances will be rejected, including
14 "[a]lteration of the grievance forms or continuation forms.  This includes writing more than one
15 line, on each line provided on the grievance form." ECF No. 48-7 at 6-7.  Moore easily could
16 have fixed this deficiency and was given additional time to resubmit his grievance, but he did not
17 do so.  As for his grievance related to his job, there is no evidence Moore moved beyond the
18 informal level.  Although Moore claims he never received a response, under AR 740.03(8),
19 Moore could have proceeded to the next grievance level if a response was overdue, but he did
20 not.  Because Moore did not properly exhaust his administrative remedies, I grant the
21 defendants' motion for summary judgment.
22 / / / /
23 / / / /

### III.  CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No. 48) is GRANTED**.  The clerk of court is instructed to enter judgment in favor of defendants Stacy Barrett, Bryant Vaughn, and James Scally and against plaintiff Maurice Moore, and to close this case.

DATED this 1st day of July, 2025.

```
                                    ANDREW P. GORDON
                                    CHIEF UNITED STATES DISTRICT JUDGE
```